**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 14-106-DLB**

**TAMMY CLARK**                                                                                          **PLAINTIFF**


**vs.**                              **MEMORANDUM OPINION AND ORDER**


**CAROLYN W. COLVIN,**
**Commissioner of Social Security**                                               **DEFENDANT**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Tammy Clark filed her current application for Supplemental Security Income ("SSI") payments, alleging disability as of June 1, 2000.  (Tr. 200-17).  Plaintiff's claim was denied initially and on reconsideration.  (Tr. 94-97, 100-102).  On December 18, 2012, Administrative Law Judge Don C. Paris conducted an administrative hearing at Plaintiff's request.  (Tr. 26-57).  ALJ Paris ruled that Plaintiff was not entitled to benefits on January 31, 2013.  (Tr. 13-22).  This decision became the final decision of the Commissioner when the Appeals Council denied review on April 19, 2014.  (Tr. 1-5).

1

On May 6, 2014, Plaintiff filed the instant action.  (Docs. # 1 and 2).  This matter has culminated in cross motions for summary judgment, which are now ripe for review.  (Docs. # 11, 12 and 13).

## II.  DISCUSSION

### A.  *Overview of the Process*

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *Id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Social Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110

2

(6th Cir. 1994).

**B.    *The ALJ's Determination***

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. (Tr. 15).  At Step 2, the ALJ found Plaintiff's history of coronary artery disease, affective disorder, major depressive disorder, anxiety disorder and morbid obesity to be severe impairments within the meaning of the regulations.  (*Id.*).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-17).  In making this determination, the ALJ noted that Plaintiff's impairments do not meet or equal Listing 12.04 (affective disorders) or Listing 12.06 (anxiety-related disorders) because her daily activities suggest only moderate limitations in social functioning and her medical history does not include repeated episodes of decompensation.  (Tr. 16-17).

At Step Four, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 416.967©; that is:

> [O]ccasional lifting and carrying 20 pounds and frequently 10 pounds; standing and walking six hours in an eight-hour workday; sitting six hours in an eight-hour workday; never climbing ladders, ropes and scaffolds; must avoid concentrated exposure to extreme cold, heat, humidity, noise, fumes, odors, dust, gases and all hazards such as unprotected heights and dangerous machinery.  The claimant is capable of understanding and remembering simple work instructions.  She is capable of carrying out simple work instructions; asking simple questions but difficulty getting along with the general public and others.  The claimant is capable of being aware of normal hazards, but has difficulty responding to changes in the work setting.

(Tr. 17-21).  The ALJ noted that the claimant has no past relevant work.  (Tr. 21).

3

Accordingly, the ALJ proceeded to the final step of the sequential evaluation.  At Step 5, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform.  (Tr. 21-22).  The ALJ based this conclusion on testimony from a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC.  (*Id*.).  The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could find light unskilled work as a hand-packer (4,300 Kentucky/315,000 nationally), order filler (3,600 Kentucky/213,000 nationally) or weigher (400 Kentucky/27,000 nationally).  (Tr. 21).  Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that she was not under a "disability," as defined by the Social Security Act.  (*Id*.).

## C.    *Analysis*

Plaintiff's counsel sets forth six arguments for the Court's consideration.  The Court will quote them verbatim: (1) the ALJ erred in stating that [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 when considered with obesity; (2) the ALJ erred in failing to find [Plaintiff's] mental impairments disabling; (3) the ALJ erred in failing to fully consider [Plaintiff's] complaints of pain; (4) the ALJ erred in stating that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967©; (5) the ALJ erred in stating that [Plaintiff] has not been under a disability as defined in the Social Security Act; and (6) [Plaintiff] should be found totally and permanently disabled from June 1, 2000.  (Doc. # 11 at 1).

4

While Plaintiff's counsel clearly identifies the issues before the Court, she fails to develop them in any detail. Instead of explaining how the ALJ failed to give appropriate weight to certain evidence or erred in reaching certain conclusions, Plaintiff's counsel simply cites the relevant law and baldly states that the law applies favorably in her client's case. The Court is under no obligation to consider such conclusory arguments. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (internal citations omitted). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Id.* That being said, the Court will address the alleged points of error to the extent that it is able. Plaintiff's counsel is on notice that such threadbare arguments will not be tolerated in the future.

1. **The ALJ's finding that Plaintiff's history of coronary artery disease did not meet or medically equal any of the Listings of Impairments is supported by substantial evidence**

At the third step in the disability determination process, the Commissioner considers the medical severity of the claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Specifically, the Commissioner must determine whether the claimant's impairment meets or equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* These Listings "describe[ ] for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 404.1525(a). If the claimant can satisfy all of the objective medical criteria, plus the duration requirement, then he or she "will be deemed conclusively disabled[ ] and entitled

5

to benefits." *Reynolds v. Comm'r of Social Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011); *see also* 20 C.F.R. § 404.1509 (stating that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months," unless it is expected to result in death).  The Commissioner may also find that the claimant is *per se* disabled if he or she demonstrates that the impairment is "at least equal in severity and duration to the criteria of any listed impairment" and meets the duration requirement.  20 C.F.R. § 404.1525(c)(3).

Listing 4.00(A)(1)(b) defines a cardiovascular impairment as a condition "result[ing] from one or more of four consequences of heart disease."  Those consequences are listed below:

(I) chronic heart failure or ventricular dysfunction

(ii) discomfort or pain due to myocardial ischemia, with or without necrosis of the heart muscle

(iii) syncope, or near syncope, due to inadequate cerebral perfusion from any cardiac cause, such as obstruction of flow or disturbance in rhythm or conduction resulting in inadequate cardiac output

(iv) central cyanosis due to right-to-left shunt, reduced oxygen concentration in the arterial blood, or pulmonary vascular disease.

Listing 4.00(I)(1) further states that "[o]besity is a medically determinable impairment that is often associated with disorders of the cardiovascular system" and "may affect the cardiovascular system because of the increased workload the additional body mass places on the heart."  Because the "combined effects of obesity with cardiovascular impairments can be greater than the effects of the impairments considered separately," the Commissioner should "consider any additional and cumulative effects of obesity" when determining whether the claimant has a severe or listing-level cardiovascular impairment.

6

*Id.* The cumulative effects should also be factored into the residual functional capacity assessment. *Id.*

Plaintiff contends that the ALJ erred in finding that her history of coronary artery disease did not satisfy Listing 4.00(A)(1)(b). She argues that her condition qualifies as a cardiovascular impairment because it resulted in chronic heart failure and discomfort or pain due to myocardial ischemia. She also states that her obesity exacerbates the effects of her cardiovascular impairment. Plaintiff believes that the ALJ would have deemed her *per se* disabled if he had taken her obesity into account, as directed by Listing 4.00(i)(1).

In making her argument, Plaintiff reveals a fundamental misunderstanding of Listing 4.00. It is an introductory section that sets forth the general rules for evaluating all cardiovascular impairments detailed in Listings 4.02 through 4.12. Stated another way, Plaintiff cannot establish the existence of a cardiovascular impairment by simply stating that she has chronic heart failure and discomfort or pain due to myocardial ischemia. Instead, she must satisfy several specific criteria set forth in Listing 4.02 to demonstrate chronic heart failure. Listing 4.04 sets forth several different criteria for showing ischemic heart disease.

The Commissioner made a similar point in her Motion for Summary Judgment. This prompted Plaintiff to file a Response, in which she argues that there is substantial evidence to show that she meets these Listings. Specifically, Plaintiff points to Dr. Louis Suarez's treatment notes, which state that she was released to limited activity after her diagnosis. (Tr. 264). Dr. Suarez also indicates that Plaintiff had an abnormal echocardiogram, abnormal stress test and heart palpitations. (*Id.*). Plaintiff further cites to her own testimony about recurring pain post-bypass. (Tr. 48-50).

7

Plaintiff's attempt to re-frame her argument fails for two reasons. First, Plaintiff's argument is predicated on a fundamental misunderstanding of the Court's role in Social Security appeals. The key inquiry is not whether Plaintiff's interpretation of the medical records is supported by substantial evidence. It is whether the ALJ's decision is supported by substantial evidence, regardless of the Court's own opinion about the record. In asking the Court to remand this case because there is substantial evidence to support her position, Plaintiff essentially invites the Court to re-weigh the evidence. Such a request is beyond the scope of the Court's review.

Moreover, Plaintiff fails to show that the ALJ should have addressed the Listings in Section 4. She did not direct the ALJ's attention to the Section 4 Listings at the administrative level. And although she suggests that the ALJ should have analyzed the Section 4 Listings on his own volition, she does not cite to any evidence in the record showing that the Section 4 Listings *may* have been met. Her self-serving testimony, combined with treatment notes made only three months after her surgery, fall far short of satisfying the specific criteria set forth in Listing 4.02 and Listing 4.04. Because "the ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ," the Court simply cannot find any error in the ALJ's analysis at Step 3. *Sheeks v. Comm'r of Social Sec.*, No. 13-1711, 2013 WL 6084279, at *2 (6th Cir. Nov. 20, 2013).

> **2.    The ALJ's finding that Plaintiff's affective disorder, anxiety disorder and major depressive disorder did not meet or medically equal Listing 12.04 is supported by substantial evidence**

Listing 12.04 governs affective disorders, which are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." To be

considered *per se* disabled according to this Listing, a claimant must satisfy the requirements of A and B[1]:

    A.    Medically documented persistence, either continuous or intermittent, of one of the following:

        1.    Depressive syndrome characterized by at least four of the following:

            a.    Anhedonia or pervasive loss of interest in almost all activities; or

            b.    Appetite disturbance with change in weight; or

            c.    Sleep disturbance; or

            d.    Psychomotor agitation or retardation; or

            e.    Decreased energy; or

            f.    Feelings of guilt or worthlessness; or

            h.    Thoughts of suicide; or

            i.    Hallucinations, delusions, or paranoid thinking[2]

    B.    Resulting in at least two of the following:

        1.    Marked restriction of activities of daily living; or

        2.    Marked difficulties in maintaining social functioning; or

        3.    Marked difficulties in maintaining concentration, persistence, or

---

1) A claimant can also be *per se* disabled under Listing 12.04 if he or she satisfies the criteria of subsection C. Although the ALJ considered the possible application of subsection C criteria in this case, Plaintiff's arguments focus on the ALJ's treatment of subsections A and B. The ALJ also considered the potential applicability of Listing 12.06 (anxiety-related disorders). Because none of Plaintiff's arguments relate to Listing 12.06, the Court has not reviewed that portion of the ALJ's Step 3 analysis.

2) Subsection A.2 lists the symptoms for manic syndrome, while subsection A.3 deals with bipolar disorder symptoms. The Court has chosen not to quote those portions of Listing 12.04 because both parties acknowledge that Plaintiff suffers from depressive disorder.

pace; or

4.      Repeated episodes of decompensation, each of extended duration

Plaintiff argues that the ALJ erred in finding that she did not meet the requirements for Listing 12.04.  Plaintiff insists that she satisfies four of the criteria set forth in subsection A (appetite disturbance, sleep disturbance with change in weight, decreased energy and difficulty concentrating or thinking) as well as two of the criteria in subsection B (marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence and pace).  However, she does not identify any alleged flaws in the ALJ's analysis, such as improperly weighed opinion evidence or overlooked medical records.  The Court can do no more than broadly review the ALJ's decision to see if it is supported by substantial evidence.

At the third step of the disability determination analysis, the ALJ found that Plaintiff has only mild limitations in conducting activities of daily living.  (Tr. 16).  In addition to managing her own personal needs independently, Plaintiff testified that she feeds and walks her dog, does light cooking, washes dishes, does laundry, drives, goes shopping and attends church.  (Tr. 16, 40-43).  As for social functioning, the ALJ concluded that Plaintiff has moderate limitations in this area because she reportedly does not get along well with family or socialize with neighbors or friends.  (Tr. 16, 51, 196-203).  She testified that she likes to be left alone, although she has developed social relationships with fellow churchgoers.  (Tr. 16, 41-42, 46, 51).  The ALJ then determined that Plaintiff has mild to moderate difficulties in persistence, concentration and pace, as she is "easily stressed when things do not go as she thinks they should and lacks the attention to pace herself in

10

completing tasks." (Tr. 16, 46-47). Finally, the ALJ noted that Plaintiff has no history of extended episodes of decompensation. (Tr. 16-17). Based upon Plaintiff's mild to moderate limitations in these areas, combined with the lack of episodes of decompensation, the ALJ concluded that Plaintiff's depressive disorder does not meet the requirements of Listing 12.04. (Tr. 17).

In reviewing this analysis, the Court notes that the ALJ identified Listing 12.04 as a potentially applicable Listing of Impairment. He set forth the specific criteria that Plaintiff must satisfy in order to be *per se* disabled under Listing 12.04. The ALJ then explained *why* Plaintiff's depressive disorder did not meet the requirements of that Listing, based upon her medical records and hearing testimony. Thus, there is substantial evidence to support his findings at Step 3.

### 3.    The ALJ's credibility assessment is supported by substantial evidence

When a claimant's complaints regarding the intensity and persistence of his or her symptoms are unsupported by objective medical evidence, the ALJ must make a credibility determination "based on a consideration of the entire case record." *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 247 (6th Cir. 2007)(*quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4 (July 2, 1996)). "The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Id.* Consistency between the claimant's complaints and the case record supports claimant's credibility while "inconsistency, although not necessarily defeating, should have the opposite effect." *Id.* at 247-48. Credibility determinations cannot be based solely on intangible or intuitive notions. *Id.* at 247.

Once the ALJ makes a credibility determination, the ALJ must explain his or her decision with enough specificity "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight." *Id.* at 248 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2 (Dec. 2, 1996)); *see also* 20 C.F.R. § 404.1529. Blanket assertions that the claimant is not believable will not suffice, nor will credibility explanations "which are not consistent with the entire record and the weight of the relevant evidence." *Id.* Reviewing courts must give great weight and deference to the ALJ's credibility determination. *Id.*

Plaintiff argues that the ALJ failed to give proper weight to her complaints of pain. (Doc. # 11-1 at 3). In support of this assertion, Plaintiff cites to her own testimony that she had "sharp and stabbing" lower back pain that radiated into her legs. (*Id.*; Tr. 34). She also stated that she was never "completely pain free." (Tr. 34). Again, Plaintiff misunderstands the nature of Social Security appeals. Even if this Court were inclined to give Plaintiff's statements more weight than the ALJ did, this alone is not grounds to disturb the ALJ's credibility assessment. His determination must stand unless Plaintiff can show that the ALJ failed to explain his decision with sufficient specificity, rendered a decision that is unsupported by substantial evidence or made blanket assertions about her believability. Because Plaintiff has failed to identify specific flaws in the ALJ's credibility assessment, the Court can do no more than broadly review his analysis to see if it is supported by substantial evidence.

At the fourth step of the disability determination process, the ALJ carefully reviewed a variety of treatment notes and medical records, then compared them against Plaintiff's own testimony about the intensity, persistence and limiting effects of her symptoms. (Tr.

12

17-21).  He found that "[t]he claimant is not fully credible, particularly with regard to her allegations of pain, limitations, and overall disability as the weight of the medical evidence does not substantially support the claimant's allegations." (Tr. 20).  The ALJ explained that Plaintiff "alleges back pain, hip pain and shoulder pain and heart problems keep her from working; however, treatment records submitted do not reflect clinical findings such as x-ray imaging or MRI scans to show impairment to the upper or lower extremities and she is neurologically intact." (Tr. 20, 34, 196-203).  He further noted that Plaintiff's physical examinations were normal and she recovered well from coronary artery bypass graft surgery. (Tr. 20, 263-292, 469-71).  Although Plaintiff testified that she could not sit for more than five minutes, "third party statements indicate the claimant sits for a couple of hours watching television, then sits for a couple of hours following dinner and sits through church services." (Tr. 20, 36-38).  Plaintiff also testified to continuing chest pain, which "is not consistent with what she related to the consultative examiner that she had no chest pain." (Tr. 20, 48-50, 469-71).

As illustrated above, the ALJ conducted a detailed review of the medical evidence in the record, summarized key aspects of Plaintiff's testimony and highlighted the inconsistencies between the two.  He then provided an articulate summary of his reasons for finding that Plaintiff was not entirely credible.  His analysis not only provides enough detail to facilitate meaningful review, it dispenses with any suggestion that he relied on intuitive notions or failed to properly review the record in rendering his assessment. Considering the ALJ's thorough credibility assessment and the level of deference afforded to such determinations, the Court simply cannot conclude that his finding was unsupported by substantial evidence.

13

**4.   The ALJ's residual functional capacity assessment is supported by substantial evidence**

A residual functional capacity ("RFC") is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Soc. Sec. Rul. 96-8p, 61 Fed. Reg. 34474, 34475 (Jul. 2, 1996).  Stated another way, the RFC is "what an individual can still do despite his or her limitations." *Id.*  "In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, [the Agency] will consider all of the medical and nonmedical evidence." 20 C.F.R. § 404.1545(e).

Plaintiff argues that the ALJ erred in finding that she had the RFC to perform a reduced range of light work.  In fact, Plaintiff contends that she is unable to perform sedentary work because she cannot lift up to ten pounds or ambulate effectively.  She supports this assertion with her own testimony that she cannot lift anything heavier than a milk jug and uses the electronic carts at Wal-Mart.  (Doc. # 11-1 at 7-8; Tr. 38-40).  To the extent that Plaintiff once again asks the Court to overstep its bounds and re-weigh the evidence or re-assess her credibility, the Court must decline the invitation.  Because Plaintiff failed to identify specific defects in the ALJ's analysis, such as improper weighing of physicians' opinions or medical records, the Court can only conduct a broad review of the ALJ's RFC assessment.

At the fourth step of the disability determination analysis, the ALJ considered all relevant evidence of record and afforded great weight to the opinions of two consultative examiners.  Physical examiner Dr. Mark V. Burns found that Plaintiff was "neurologically

14

intact with normal gross manipulation and grip strength and range of motion was within normal limits in the upper or lower extremities." (Tr. 19, 468-73). Her straight leg raises were negative in both sitting and supine positions and there was no evidence of tenderness or spasms in her back. (*Id.*). Dr. Burns concluded that she "should be able to lift, push, pull, bend, stoop, squat, kneel, crawl, crouch and climb without difficulty." (*Id.*). Mental evaluator Dr. Timothy L. Baggs found that Plaintiff had "mild generalized anxiety and mild to possibly moderate depression secondary to anxiety disorder not otherwise specified, dysthymic disorder, and chronic mild to moderate major depressive disorder." (Tr. 19, 457-67). However, she was "oriented to person, place and time" and her memory was intact. (*Id.*). Dr. Baggs concluded that Plaintiff "has the ability to understand and remember simple instructions and mild to moderate difficulty relating effectively with others and adapting to normal work pressure and stress." (*Id.*).

The ALJ gave some weight to a state agency finding that Plaintiff was limited to medium work, but ultimately determined that she should be limited to light work due to leg edema that developed after her heart surgery. (Tr. 20, 474-77). The ALJ also considered a third party function report completed by Plaintiff's daughter, although he noted that her statements were entitled to less weight than the consultative examiners' opinions because she was not a medical professional or a disinterested third party. (Tr. 20, 195-203). Plaintiff's own testimony was also taken into account, although the ALJ found that she was not entirely credible, for reasons stated above. (*Id.*).

In reviewing this analysis, the Court notes that the ALJ considered opinion evidence from a variety of sources, compared those opinions against the objective medical evidence and determined how much weight to afford those opinions. He then factored all reasonable

15

limitations into Plaintiff's RFC assessment, taking care to explain *how* he weighed the opinions and *why* he found the incorporated limitations to be credible.  Thus, there is substantial evidence to support the ALJ's finding that Plaintiff has the RFC to perform light unskilled work.

> **5.    The ALJ's finding that Plaintiff has not been under a disability is supported by substantial evidence**

At Step 5, ALJs may consider "'reliable job information'" from various vocational publications "as evidence of the claimant's ability to do other work 'that exists in the national economy." *Lindsley v. Comm'r of Social Sec.*, 560 F.3d 601, 603 (6th Cir. 2009) (quoting Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)); *see also* 20 C.F.R. §§ 404.1566(d), 416.966(d).  Such publications include the Dictionary of Occupational Titles, which "includes information about jobs (classified by their exertional and skill requirements) that exist in the national economy." *Id.* (quoting 20 C.F.R. § 416.969).  ALJs may also "consider the testimony of so-called 'vocational experts' ("VEs") as a source of occupational evidence." *Id.* (citing S.S.R. 00-4p, 2000 WL 1898704, at *2).

In posing a hypothetical question to a vocational expert, an ALJ must accurately describe Plaintiff's functional limitations. *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779. (6th Cir. 1987).  However, the ALJ need only incorporate those limitations he finds to be credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

At first blush, Plaintiff's argument seems to attack the ALJ's Step 5 analysis, as she objects to his finding of "not disabled."  (Doc. # 11-1 at 8).  However, Plaintiff proceeds to argue that she meets the definition of "disabled," citing to medical evidence that has already

16

been treated at length.  Thus, it is difficult to tell whether Plaintiff is simply recapitulating arguments raised earlier in her Motion or objecting to the hypothetical question posed to the VE.  If the former, the Court will simply stand upon its analysis thus far.  If the latter, the Court notes that the ALJ is only obliged to incorporate the limitations that she finds to be credible.  In this case, the ALJ asked the VE to suppose someone with Plaintiff's age (48), education (high school), work experience (none) and residual functional capacity (light unskilled), and asked whether jobs exist in the national economy for such an individual. (Tr. 21-22).  Because the ALJ's RFC assessment is supported by substantial evidence, and because the ALJ incorporated all credible limitations into the hypothetical posed to the VE, the Court finds no error.

### 6.    Plaintiff should not be found totally and permanently disabled from June 1, 2000.

Plaintiff's final argument pertains to the onset date of her disability.  However, the Court has affirmed the ALJ's finding of "not disabled."  Absent a disability, there is no onset date.  Thus, this argument is a moot point.

### III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)    The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2)    Plaintiff's Motion for Summary Judgment (Doc. # 11) is hereby **DENIED**;

(3)    Defendant's Motion for Summary Judgment (Doc. # 12) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 29th day of April, 2015.



Signed By:

*David L. Bunning* _DB_

**United States District Judge**

G:\DATA\SocialSecurity\MOOs\London\14-106 Clark MOO.wpd

18